825 F.2d 408
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John B. VESTER, Plaintiff-Appellant,
v.
W.P. ROGERS, Warden; Robert Fry, Dr., Chief Physician; Mr.
Welch, Med. Administrator; Fred Jordan, Regional
Administrator; Dr. Boern, Chief
Physician; Dr. Brown,
physician, Defendant-Appellee.
 No. 87-7109
 United States Court of Appeals, Fourth Circuit.
 Submitted May 29, 1987.
Decided July 14, 1987.
 
 John B. Vester, appellant pro se.
 Richard Francis Gorman, III, Office of the Attorney General of Virginia, for appellees Rogers, Fry, Welch, and Jordan.
 Mary Moffett Hutcheson Priddy, McGuire, Woods, Battle & Boothe, for appellees Boern and Brown.
 Before WIDENER, SPROUSE and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 John B. Vester, a Virginia inmate confined at the Powhatan Correctional Center, filed suit under 42 U.S.C. Sec. 1983 against W. P. Rogers, warden of the Powhatan Correctional Center; Dr. Robert Fry, chief physician for the Virginia Department of Corrections; W. P. Welch, medical administrator at Powhatan; Fred Jordan, acting regional administrator of the Department of Corrections for the Powhatan region; Dr. Beorn, chief physician at Powhatan; and Dr. Brown, a full-time physician at Powhatan. Vester's complaint alleges deliberate indifference to serious medical needs, focusing on allegedly inadequate treatment of an eye problem and of lumps in his groin area. Vester also generally alleged that Drs. Beorn and Brown, who are no longer employed by the Department of Corrections, did not work during all the hours for which they were being paid by the state, and that the remaining defendants either were aware or should have been aware of this fact. Vester concludes from this that the 'deliberate indifference to his serious medical needs resulted from an on-going conspiracy by all of the Defendants to pay, and be paid, a salary for a specified number of hours dedicated to the treatment of inmates . . ., when those being paid to provide these medical services were intentionally and knowingly shirking their duties.'
 
 
 2
 The district court properly focused in this case on the particular incidents of inadequate medical care alleged by Vester to have adversely affected him. Finding that Vester had failed to establish a violation of his Eighth Amendment rights, the court correctly concluded that he could not prevail on his theory of a conspiracy to violate those rights. We affirm the judgment of the district court.
 
 
 3
 We first note that the district court entered summary judgment in favor of the defendants on the basis of defendants' affidavits which were supported by Vester's medical records. The court did not advise Vester of his right to file counter-affidavits as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Vester did, however, file a complete, factual, and detailed response, supported by affidavit and exhibits, to each defendant's motion for summary judgment. As neither the record nor Vester's brief on appeal suggests the existence of any factual matter which Vester failed to raise through lack of proper notice, we treat the failure to afford him Roseboro notice as harmless error.
 
 
 4
 Vester's medical records reflect that he presented himself at sick call on approximately thirteen occasions between October 1984 and November 1986 complaining of irritation in his eyes. Vester was examined and treated on each occasion. Although he complains that diagnosis of his problem has been inaccurate and treatment inefficacious, the record suggests only a disagreement as to the proper course of treatment and not deliberate inattention or indifference to the problem. We accordingly find no violation of the Eighth Amendment. See Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).
 
 
 5
 As to the lumps in Vester's groin area, the record reflects that Vester was referred to the Genital Urology Clinic at the Medical College of Virginia (MCV) for examination and treatment of this problem. Dr. Pentauro, a urology specialist at MCV, examined Vester on January 7, 1986, prescribed Vitamin E, 400 mg., to be taken three times a day and noted that Vester should return in three months for a follow-up examination. The Office of Health Services of the Department of Corrections, which must approve all requests for surgery and consultant services, advised that follow-up should be conducted at Powhatan, rather than at MCV.
 
 
 6
 Vester alleges that when he was not taken for his follow-up appointment at MCV, he wrote two letters to Dr. Brown, requesting that the follow-up appointment be arranged. When Dr. Brown did not respond to his letters, Vester raised the issue of the follow-up appointment with him on several other occasions, when Vester had been referred to Dr. Brown after presenting at sick call in connection with other problems, including a problem with his hip. According to Vester, Dr. Brown then asked him whether he had come to see him about a hip problem or about the lumps. When Vester answered that he had signed up to see him because of his hip, Dr. Brown told him that he would have to make up his mind what he wanted to be treated for, further stating that he did not have time for numerous complaints by every inmate who came to see him.
 
 
 7
 Although Vester's allegations suggest that Dr. Brown responded in a less than professional fashion to Vester's efforts to obtain follow-up treatment for the lumps in his groin area, the allegations nevertheless fail to suggest that Dr. Brown was deliberately indifferent to a serious medical need. Dr. Brown was not the doctor who initially referred Vester to the Genital Urology Clinic at MCV. Nor did he have any involvement in the Office of Health Services' disapproval of the follow-up visit at MCV. Dr. Brown treated Vester for each presenting complaint when he saw Vester at sick call. Although Vester presented at sick call on eleven occasions between July and November 1986, during the period when he was awaiting further treatment for the lumps in his groin area, and received treatment for his presenting complaint from various nurses and doctors, on none of these occasions were the lumps his presenting complaint. Given Dr. Brown's tangential involvement in this particular medical problem and the fact that Vester never presented at sick call for further treatment of this problem, we cannot find that Dr. Brown's nonresponsiveness to Vester's inquiries rises to the level of an Eighth Amendment violation.
 
 
 8
 We accordingly affirm the judgment of the district court. We dispense with oral argument because the facts and legal issues are adequately developed in the materials before this Court and argument would not significantly aid the decisional process.
 
 
 9
 AFFIRMED.